IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN CREVELING, | : | |
| | : | |
| Plaintiff, | : | No. 4:07-CV-0661 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| COLUMBIA COUNTY, ET AL., | : | |
| | : | |
| Defendants. | : | |

**M E M O R A N D U M**

April 22, 2008

**BACKGROUND:**

On April 10, 2007, plaintiff Ryan Creveling instituted this civil action. In his amended complaint, plaintiff sets forth six claims under 42 U.S.C. § 1983 (Counts I-VI), as well as state law claims for assault (Count VII), battery (Count VIII), and intentional infliction of emotional distress (Count IX). Defendants are are Columbia County, Columbia County Deputy Sheriffs James Arter, Steven Hartzel, Kristopher Keefer, William Beitz, Paul D'Angelo, Columbia County Sheriff Tim Chamberlain, the Town of Bloomsburg, and Bloomsburg Police Officers Leonard Rogutski and David Edgar. The complaint arises out of an allegedly unlawful arrest of plaintiff by defendants.

1

Plaintiff has brought six separate claims under 42 U.S.C. § 1983.  His first claim is against defendants Arter, Hartzel, Keefer, Beitz and D'Angelo for illegal entry into plaintiff's home in violation of the Fourth Amendment.  (Rec. Doc. No. 14, ¶ 54.)  This count also contains a claim that defendants' conduct violated plaintiff's First Amendment rights as it was in retaliation for plaintiff's exercise of protected speech.  (Id.)  His second claim is against defendants Arter, Hartzel, Beitz, and D'Angelo for illegal seizure of plaintiff in violation of the Fourth Amendment.  (Id. ¶ 58.)  This count also appears to set forth a claim that the use of force when making the arrest was excessive.  (Id.)  His third claim is against defendant Chamberlain for failing to supervise and train his deputy sheriffs and having no policies concerning warrantless entries and seizures in violation of the Fourth Amendment.  (Id. ¶ 62.)  His fourth claim is against defendants Rogutski and Edgar and sets forth another claim for an illegal seizure.  (Id. ¶ 66.)  His fifth and sixth claims under § 1983 are against the Town of Bloomsburg and Columbia County, respectively, and claim that each has a custom or policy of permitting its law enforcement officers to violate the constitutional rights of citizens.  (Id. ¶¶ 70, 74.)  Finally, plaintiff's complaint contains state law claims of assault, battery, and intentional infliction of emotional distress.  (Id. ¶¶ 77-88.)

On November 11, 2007, plaintiff and the Bloomsburg defendants filed a

stipulation of voluntary dismissal concerning all claims against the Town of Bloomsburg, David Edgar, and Leonard Rogutski. (Rec. Doc. No. 28.) Thus, Counts IV and V, which only named the Bloomsburg defendants, have been dismissed.

The parties have completed discovery. On January 15, 2008, the remaining defendants filed a motion for summary judgment. (Rec. Doc. No. 32.) Opposing and reply briefs have been filed and the matter is ripe for disposition. For the following reasons, we will grant the motion.

**STATEMENT OF FACTS:**

On January 11, 2006, defendant D'Angelo attempted to execute a valid arrest warrant of nonparty Justin Betts at his residence of 29 East Sixth Street, Bloomsburg, Pennsylvania. (Rec. Doc. No. 33, ¶¶ 1, 4.) D'Angelo had a JNET photograph of Betts with him at the time he attempted to execute the warrant. (Id. ¶ 6.) At the time of the incident, Betts was 29 years old, 6 feet to 6 feet 1 inches tall, and weighed approximately 155 pounds. (Id. ¶ 7; Rec. Doc. No. 38, ¶ 7.)

D'Angelo arrived at the residence and plaintiff, who was Betts' roommate, answered the door. (Rec. Doc. No. 33, ¶ 11.) At the time of the incident, plaintiff was 28 years old, 6 feet tall, and weighed approximately 180 to 190 pounds. (Id. at

3

¶ 8; Rec. Doc. No. 38, ¶ 8.)  Plaintiff informed D'Angelo that he was not Betts but did not identify himself as Betts' roommate or provide any identification.  (Rec. Doc. No. 38, ¶ 11.)

What happened next is disputed.  Defendants contend that plaintiff forcefully closed the door and smashed it against D'Angelo's foot which was between the door and the doorjamb.  (Rec. Doc. No. 33, ¶ 14.)  D'Angelo then tried to push against the door with his shoulder in order to get his foot out and plaintiff again slammed the door, which struck D'Angelo in the right shoulder.  (Id. ¶ 15.)  Plaintiff, on the other hand, contends that after he informed D'Angelo that he was not Betts, he asked D'Angelo to remove his foot and informed him that he was closing the door.  (Rec. Doc. No. 38, ¶ 15.)  Plaintiff then closed the door and D'Angelo's foot slid off the jamb.  (Id.)  Plaintiff also contends that he did not slam the door a second time and strike D'Angelo's shoulder.  (Id.)

D'Angelo then called for backup and defendants Keefer, Arter, and Hartzel soon arrived.  (Rec. Doc. No. 33, ¶¶ 16-17.)  What happened next is also disputed. Defendants contend that Keefer then knocked on the door and that plaintiff began yelling profanities.  (Id. ¶ 22.)  Defendants then observed plaintiff through a window pacing around the house and then running towards the kitchen.  (Id. ¶ 25.) At this point, defendant Keefer forced the door open.  (Id. ¶ 26.)  Defendants

entered the house and told plaintiff to get on the ground. (Id., ¶ 28.) Plaintiff stood there with his hands out rather than getting on the ground, and defendants then took him to the ground and arrested him. (Id. ¶ 29.)

Plaintiff, on the other hand, contends that after backup arrived, defendants were the individuals using profanities and that he was simply sitting on a stool by the door rather than pacing around the house. (Rec. Doc. No. 38, ¶ 22.) Furthermore, he contends that he remained on a stool the entire time and never ran towards the kitchen. (Id. ¶¶ 22, 24.) Defendants then broke down the door, tackled him to the ground, put his face in the carpet and his hands behind his back, and handcuffed him. (Rec. Doc. No. 38, ¶¶ 22, 28-29.)

After plaintiff was arrested, defendants asked him to identify himself. (Rec. Doc. No. 33, ¶ 42.) Plaintiff again refused to identify himself and instead responded "I'm in handcuffs. I'm under arrest. You broke down my door. Take me away." (Rec. Doc. No. 38, ¶ 42.) Plaintiff was then taken to the Bloomsburg Police Station. (Rec. Doc. No. 33, ¶ 48.) At some point thereafter, defendants became aware that plaintiff was not Betts. Defendants then contacted an assistant district attorney to inquire as to whether they should file charges against plaintiff for his alleged actions involving the door and defendant D'Angelo and were instructed not to do so. (Id. ¶ 49.) Plaintiff was then returned to his residence. (Id.

5

¶ 50.)

Plaintiff experienced redness on his wrists from the handcuffs, but was otherwise uninjured from the arrest. (Id. ¶ 51.) He never sought any medical attention for this redness. (Id. ¶ 53, Rec. Doc. No. 38, ¶ 53.) Plaintiff did seek psychological counseling as a result of the incident one or two months later. (Rec. Doc. No. 38, ¶ 53.)

**DISCUSSION:**

### I. Legal Standard

A district court may properly grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving

for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

To the contrary, when the moving party bears the burden of persuasion at trial, it must point to evidence in the record that supports its version of all material facts and demonstrate an absence of material facts. National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). If the moving party does not meet this burden, the court must deny summary judgment even if the nonmoving party does not produce any opposing evidence. Id.

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that a issue of material fact remains.  Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact.  Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II.  Analysis

### A.  Counts I and II

As mentioned, Count I of the complaint sets forth a claim under § 1983 for illegal entry into plaintiff's home in violation of the Fourth Amendment.  (Rec. Doc. No. 14, ¶ 54.)  Count I also contains a claim that defendant's conduct violated plaintiff's First Amendment rights as it was in retaliation for plaintiff's exercise of protected speech.  (Id.)  Count II of the complaint sets forth a claim that his arrest was in violation of the Fourth Amendment because it was without probable cause and because the use of force was excessive.  (Id. ¶ 58.)

In order for plaintiff to prevail under 42 U.S.C. § 1983 he must establish two elements: 1) that the conduct complained of was committed by a person acting

under color of state law; and 2) that the conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Yet, the Fourth Amendment is not necessarily violated if law enforcement officers arrest the wrong person. Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Hill v. California, 401 U.S. 797 (1971)). This is because the standard for the Fourth Amendment is reasonableness and such an arrest may still be reasonable under the circumstances. Hill, 401 U.S. at 802-03. If law enforcement officers mistake a person for someone else they seek to validly arrest, the arrest is constitutional if 1) there is probable cause to arrest the person sought and 2) the arresting officers reasonably believe that the person arrested is the person sought. United States v. Marshall, 79 F.3d 68, 69 (7th Cir. 1996) (citing Hill, 401 U.S. at 802) (other citations omitted). Furthermore, we note that if law enforcement officers investigated every claim of innocence or discrepancy between the description in the warrant and the appearance of the person arrested because they were seeking to avoid liability under § 1983, many a criminal would be able to escape while the officers conducted such an investigation. Johnson v. Miller,

680 F.2d 39, 41 (7th Cir. 1982).

In the instant case, it is undisputed that defendants possessed a valid arrest warrant for Justin Betts, who was plaintiff's roommate. Thus, the first requirement of the test set out in Marshall is clearly satisfied. When defendants arrived at the residence to arrest Betts, they possessed a JNET photograph of him. At the time of the incident, Betts was 29 years old, 6 feet to 6 feet 1 inches tall, and weighed approximately 155 pounds. Plaintiff was 28 years old, 6 feet tall, and weighed about 180 to 190 pounds. Although plaintiff denied being Betts, he did not identify himself or provide any identification. Plaintiff simply attempted to shut the door and end the encounter. Based on the similarity of the descriptions of plaintiff and Betts, the fact that they both resided at the same address, and plaintiff's failure to identify himself or provide identification, we find that defendants possessed a reasonable belief that plaintiff was Betts.

Additionally, we find that the use of force was not excessive. The Fourth Amendment has been found to prohibit the use of excessive force when attempting to effect a seizure of an individual. Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004) (citing Graham v. Connor, 490 U.S. 386 (1989). Such a claim is analyzed under the Fourth Amendment's reasonableness standard. Graham, 490 U.S. at 395. In the instant case, plaintiff contends that he offered no resistance and was taken to

the ground by defendants. Defendants, on the other hand, contend that plaintiff was asked to get on the ground and instead stood there with his hands out. Either way, it is undisputed that the defendants' actions in taking plaintiff to the ground and arresting him caused no injuries other than soreness from the handcuffs. Furthermore, plaintiff did not seek any medical treatment for this soreness. Finally, the fact that plaintiff may have sought psychological counseling for the incident more than one month after it occurred does not bear any connection to whether the arrest involved excessive force. Therefore, we conclude that defendant's actions in taking plaintiff to the ground, handcuffing him, and causing no injuries other than sore wrists, were reasonable and not excessive. Therefore, we conclude that the arrest of plaintiff was reasonable and will dismiss Count II of the complaint.

     We also conclude that the entry to plaintiff's residence in order to make the arrest was also reasonable. Defendants argue that the entry to the premises was reasonable due to the assault by plaintiff on defendant D'Angelo as well as the existence of exigent circumstances because plaintiff's movements in the house caused defendants to believe they were in danger. (Rec. Doc. No. 34, at 7-9.) Of course, plaintiff's deposition testimony disputes that he slammed the door on D'Angelo's foot or shoulder or that he was pacing in the house, and thus these

disputed facts cannot form the basis of reasonableness to enter the house at the summary judgment stage of the proceedings. Nevertheless, we believe the entry into the house was lawful in order to make the arrest of an individual they reasonably believed to be Betts. Law enforcement officers may enter a suspect's residence to make an arrest armed only with an arrest warrant if they have probable cause to believe the suspect is in the home. Payton v. New York, 445 U.S. 573, 602-03 (1980); United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2006). Here, defendants reasonably believed that plaintiff was Betts, and they obviously knew that the individual they believed to be Betts was in the house because he had answered the door. Therefore, we find that the entry to the home was reasonable and will dismiss Count I of the complaint to the extent it sets forth a claim based defendants' entry into plaintiff's residence.

Finally, we conclude that plaintiff's First Amendment claim must fail as well. To prove that the defendants violated plaintiff's First Amendment rights by retaliating against him, plaintiff must show: (1) that he engaged in protected activity; (2) that the defendants responded with retaliation; and (3) that the protected activity was the cause of the retaliation. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d. Cir. 2003) (quoting Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997). There is simply no evidence in the record that defendants retaliated

12

against plaintiff for the exercise of any protected activity. Rather, the evidence undisputedly suggests that the motivation of defendants was their desire to arrest an individual for which they reasonably believed they had a valid arrest warrant. Therefore, to the extent Count I sets forth a claim based on retaliation for the exercise of First Amendment rights, it is dismissed.

B.  Remaining Claims

Plaintiff's remaining § 1983 claims involve a claim against defendant Chamberlain, the Sheriff of Columbia County, that he failed to supervise and train his deputy sheriffs (Count III), as well as a claim against Columbia County for having a policy or custom of permitting its law enforcement officers to violate the constitutional rights of citizens (Count VI). Plaintiff has also set forth state law claims for assault, battery, and intentional infliction of emotional distress (Counts VII-IX). We believe that our conclusion that defendants did not violate plaintiff's Fourth Amendment rights by entering into plaintiff's home and arresting him and did not violate plaintiff's First Amendment rights necessarily causes each of these claims to fail. Even if Chamberlain failed to supervise and train his deputy sheriffs and Columbia County had a policy or custom permitting its law enforcement officers to violate the constitutional rights of citizens, these actions did not result in a violation of a constitutional right in the instant case, which is a prerequisite to

13

such a claim. See Monell v. Dept. of Social Services, 436 U.S. 658, 694-95 (1978) (ruling that a plaintiff can recover under § 1983 when a local government's policy or custom causes a constitutional injury to the plaintiff).

Similarly, our conclusion that the arrest of plaintiff was lawful and that no excessive force was utilized necessarily precludes recovery for assault, battery, or intentional infliction of emotional distress. Therefore, we will dismiss Counts III, VI, VII, VIII, and IX of the complaint.

       s/ James F. McClure, Jr.
       James F. McClure, Jr.
       United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN CREVELING, | : | |
| | : | |
| Plaintiff, | : | No. 4:07-CV-0661 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| COLUMBIA COUNTY, ET AL., | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

April 22, 2008

In accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment is GRANTED. (Rec. Doc. No. 32.)

2. Final judgment is entered in favor of defendant and against plaintiff.

3. The clerk is directed to close the case file.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge